UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| EUGENIO ESPINOZA MARTINEZ, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-92 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") and currently is incarcerated at the Stevenson Unit in Cuero, Texas. The actions about which he complains occurred at the McConnell Unit. Proceeding *pro se*, petitioner filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on March 21, 2014 (D.E. 1).[1] Petitioner claims that his right to due process was violated in a disciplinary hearing held at the McConnell Unit which resulted in the imposition of punishment. Respondent filed a motion for summary judgment on June 5, 2014 (D.E. 14) to which Petitioner did not respond. As discussed more fully below, it is respectfully recommended that Respondent's motion for summary judgment be granted and Petitioner's habeas corpus petition be denied. It is further recommended that a Certificate of Appealability be denied.

---

[1] Petitioner stated under penalty of perjury that he placed his petition in the prison mail system on March 21, 2014 and it is considered filed as of that date. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) and Rule 3, Rules Governing Section 2254 Cases.

## JURISDICTION

Jurisdiction and venue are proper in this court because Petitioner was convicted in the Southern District of Texas. 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959 (5th Cir. 2000).

## BACKGROUND

Petitioner currently is serving a fifteen-year sentence for aggravated assault causing serious bodily injury and a five-year sentence for tampering with physical evidence (Mot. for Sum. Jmt., Ex. A; D.E. 14-1 at 2). He does not complain about his holding convictions, but challenges the results of a disciplinary hearing. In disciplinary case number 20130182435, Petitioner was accused and found guilty of assaulting another offender by hitting him in the face without a weapon, resulting in a non-serious injury (DHR at 1; D.E. 15-1 at 3).

In the offense report, the charging officer wrote that on December 3, 2012, prison officers received information that Petitioner and another inmate, identified as "Snow," were involved in an altercation in the shower. Petitioner and Snow were interviewed. Snow had bruising to his face and reported that Petitioner had called him to the shower and then hit him in the face. Petitioner admitted to hitting Snow when questioned. (DHR at 5; D.E. 15-1 at 7).

During the investigation of the offense Petitioner stated that he had hit Snow because Snow was engaging in homosexual acts in the dormitory (DHR at 8; D.E. 15-1 at 10). Petitioner also stated that he did not want the assigned Disciplinary Hearing Officer

to hear his case because she was homosexual and would be biased (DHR at 7; D.E. 15-1 at 9).

Petitioner asserts that the original hearing was held on January 3, 2013 and he was found guilty. He filed grievances regarding the result of the hearing and was informed on March 6, 2013 that he was subject to a rehearing on the charges because the previous case had been overturned. While serving him with the documents on the rehearing, an officer loudly discussed the fact that Plaintiff had complained about homosexual activity in the dormitory, thus labeling Petitioner a "snitch" in front of other inmates. Petitioner asked the officer to leave him alone and she left without taking Petitioner's statement.

Petitioner subsequently received a threat from another inmate and, on March 13, 2013, attempted suicide. He was moved to a mental health unit for approximately two months and returned to the McConnell Unit on May 2, 2013. (Pet's Memo at 2; D.E. 2 at 2). Respondent did not discuss Petitioner's factual assertions regarding the earlier hearing or the reason for the two-month delay between Petitioner's receiving notice of the hearing on March 6, 2013 and the actual hearing held on May 10, 2013. It is assumed that Petitioner's recitation of facts is correct.

The second hearing began on May 6, 2013 and was continued until May 10, 2013, to allow the charging officer to be contacted. At the hearing petitioner argued that he had already been punished by the offense and that the time limits had expired. Petitioner was excluded from the hearing for disruptive and aggressive behavior (DHR at 1-2; D.E. 15-1 at 3-4). The charging officer testified that during the investigation Petitioner stated that he hit Snow and Snow had injuries (DHR at 2; D.E. 15-1 at 4). Petitioner was found

guilty based on the charging officer's report and testimony that Petitioner admitted striking Snow. Petitioner was punished with a reduction in Line Class from S3 to L1 (DHR at 1; D.E. 15-1 at 3).[2] He did not lose any good time.

Petitioner filed a Step 1 grievance on May 13, 2013, complaining that he already had been convicted and punished on the charges in January. He said that part of his punishment was being restricted to phone calls to his family through the offender phone system and that he had already served out the same punishment in January (DGR at 1; D.E. 15-2 at 3). Petitioner received a response on June 10, 2013 stating that the disciplinary case had been addressed in a prior grievance and that no further review would be conducted (DGR at 2; D.E. 15-2 at 4).

Petitioner filed a second Step 1 grievance on May 13, 2013, arguing that his due process rights were violated when (1) his hearing was not held in a timely fashion and TDCJ-CID procedures were not followed with regard to extension of the time limits; (2) he was not allowed to be present at his hearing; (3) he was not allowed to call witnesses in his defense; (4) he was denied assistance of substituted counsel; (5) he was denied the right to present additional evidence or call additional witnesses; (6) the hearing officer was biased because Petitioner had filed a grievance against her and Saenz, another officer; (7) another officer was biased because Petitioner complained about him and (8) the date of the alleged incident was incorrect on documents (DGR at 3-4; D.E. 15-2 at 5-6).

---

[2] In his complaint, Petitioner alleged that he also was punished with the loss of forty-five days recreation and commissary privileges. The restrictions do not appear in the documents submitted by Respondent (DHR at 1).

Petitioner received a response which referenced a different disciplinary case number, but which told him there were no due process errors at his hearing and that he was excluded from the hearing because of disruptive and aggressive behavior, his witnesses were not called because they were not present at the incident and the case was heard within the established time limits (DGR at 4; D.E. 15-2 at 6).

Petitioner filed a Step 2 grievance on July 15, 2013, where he pointed out that an incorrect hearing number was referenced and reiterated some of his earlier arguments (DGR at 5; D.E. 15-2 at 7). He received a response referring to the correct case and informing him that no errors were found at the hearing (DGR at 6; D.E. 15-2 at 8).

Petitioner filed this application for habeas relief on March 21, 2014 and makes the following arguments: (1) Prison officials failed to follow their own policy and procedural rules regarding time limits for disciplinary hearings; (2) His substitute counsel did not help him either before or during the hearing; (3) He was not allowed to a make a full and complete statement in his defense; (4) He was not allowed to call witnesses; (5) The hearing officer, charging officer and disciplinary supervisor acted in a vindictive, retaliatory and biased manner; (6) He was not provided a legible written statement as to the evidence relied upon to find him guilty and the reasons for excluding his witnesses; (7) He was excluded from the hearing without good reason and (8) He was not allowed to represent himself at the hearing.

In his motion for summary judgment Respondent argues that Petitioner has failed to allege violation of a constitutional right. Respondent reserves the right to raise the

defense of exhaustion of administrative remedies, but concedes that the petition is not barred by limitations and is not second or successive.

## APPLICABLE LAW

### A. Due Process Rights

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States. In *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995), the U.S. Supreme Court described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were correctly established and applied in [*Wolff v. McDonnell*, 418 U.S. 539, 94 (1974)] and [*Meachum v. Fano*, 427 U.S. 215 (1976)]. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Id*. (internal citations omitted). The Supreme Court held in *Sandin* that confinement in disciplinary segregation for twenty-three hours and ten minutes per day "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin*, 515 U.S. at 486. The Court focused on the nature of the liberty interest at issue, finding that conditions of disciplinary segregation did not differ significantly from conditions in administrative segregation and protective custody. *Id.*

To the extent petitioner is complaining about a reduction in line class, he fails to state a basis of relief.  Generally, a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on his eligibility for parole and in turn, on the amount of time he is in custody.  Even so, "such speculative, collateral consequences do not create constitutionally protected liberty interests."  *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995)(*citing Meachum v. Fano*, 427 U.S. 215, 229, n. 8 (1976)). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)(citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)).  *See also Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating).

Because Petitioner did not suffer the loss of a liberty interest, he cannot show the violation of a constitutional right.  Accordingly, summary judgment should be entered for Respondent.

**B.  Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A).  Although Petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine

whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. Daniel*, 529 U.S. 473, 484 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added).

In Petitioner's case, it is recommended that his cause of action be dismissed on the merits. If the district court orders that Petitioner's cause of action be dismissed and Petitioner seeks a COA in order to proceed with his case, it is further recommended that

the COA be denied because reasonable jurists would not find it debatable that Petitioner did not suffer the loss of a liberty interest following his disciplinary hearing.

## RECOMMENDATION

Based on the foregoing, it is recommended that Respondent's motion for summary judgment (D.E. 14) be granted. Petitioner's cause of action for habeas corpus relief should be denied. It is further recommended that any request for a Certificate of Appealability be denied.

Respectfully submitted this 31st day of October, 2014.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).